## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WEST PLAINS, LLC, <br><br> Plaintiff-Counterclaim Defendant <br><br> v. <br><br> WELLS TRADING CORP. f/k/a WEST PLAINS CO. and BRYCE WELLS, <br><br> Defendants-Counterclaim Plaintiffs | C.A. No. 13-1053-LPS |

## MEMORANDUM ORDER

Pending before the Court is West Plains LLC's ("West" or "Plaintiff") motion for reconsideration, pursuant to Fed. R. Civ. P. 59(e) and D. Del. Local Rule 7.1.5, of the Court's grant of partial summary judgment in favor of Defendant Bryce Wells ("Wells") on Count IV (Breach of Contract) of Plaintiff's Complaint (D.I. 93). Defendants Wells Trading Corp. f/k/a West Plains Co. and Bryce Wells ("Defendants") moved for partial summary judgment on January 9, 2019. (D.I. 73) After considering the parties' briefing (D.I. 74, 79, 87) and hearing oral argument on May 10, 2019 (D.I. 96), the Court granted Defendants' motion (*see* D.I. 93, 96), dismissing Wells from the case. Plaintiff now contends that the Court's order should be reconsidered in part "for the reason that if the evidence in the record is viewed in a light most favorable to West, a genuine issue of material facts exists as to whether Wells breached his contractual obligations owed to West." (D.I. 95 at 1)

Having considered the parties' briefing (D.I. 95, 97), **IT IS HEREBY ORDERED** that Plaintiff's motion (D.I. 95) is **DENIED**.

1

1. The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration is the "functional equivalent" of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (internal citation omitted).

2. The relevant facts are as follows. On February 25, 2012, Wells agreed to sell grain elevators located in Nebraska, Colorado, and South Dakota ("Country Elevators") to Plaintiff, which was memorialized in the parties' Purchase and Sale Agreement ("PSA"). (D.I. 95 at 2) During negotiations, Wells provided Plaintiff with a February 28, 2010 financial appraisal by Dennis Vogan (the "Vogan Appraisal" or "Vogan report"), which assigned an estimated fair market value to the Country Elevators. (*Id.*) "West asserts that Wells knew or should have known the data provided by Wells to Dennis Vogan that comprised a material portion of the valuation for the Country Elevators reported in the Vogan Appraisal was false and inaccurate at the time Wells directed the appraisal to be given to West." (*Id.*) This, West alleges, was in violation of Section 6.1(d) of the Wells Agreement, in which the seller warranted "that the data presents a complete picture of the Assets or its business" and that the data is accurate to "the best of seller's knowledge." (*Id.* at 3) West now asserts that the Court's grant of summary judgment on Count IV "constitutes a ***clear error*** in applying the known facts to the law." (*Id.* at 5) (emphasis added)

2

3.      West is correct that the appropriate questions are "whether the financial information contained in the Vogan Appraisal was inaccurate and whether Wells had knowledge of that inaccuracy when he sent the appraisal to West" (*id.*) and whether Section 6.1(d) applies to the Vogan Appraisal. After having considered the briefing on the motion for reconsideration, the Court concludes that it did not commit a clear error in finding no genuine dispute of material fact on either of these questions, nor in answering them in favor of Wells.

4.      Addressing Count IV specifically, the Court held that "no reasonable factfinder could find that there was a contractual duty that defendant Wells breached." (D.I. 96 at 66) The Court found that, "[a]mong other things, there's no evidence that defendant Wells warrantied the accuracy of the Vogan report." (*Id.*) In its present motion, West writes, "[i]t is undisputed that Wells attested to the accuracy of the data he shared with West regarding the Country Elevators. It is further undisputed that he shared the Vogan Appraisal with West, and that the Vogan Appraisal reflected Dennis Vogan's assessment of the fair market value of the Country Elevators owned by Wells." (D.I. 95 at 5) (internal citations omitted) However, *it is disputed* whether Section 6.1(d) applies to the Vogan Appraisal – and West has failed to show that the Court clearly erred in concluding it did not.

5.      During oral argument, West's counsel acknowledged: "I don't think [Wells] states anywhere that the Vogan report itself is accurate. I don't think that language is in the contract, but the schedules that are in the contract are derived directly from the values that were, that Mr. Vogan gave to those Country elevators in his 2010 report." (D.I. 96 at 36) The Court followed up by asking, "What did Mr. Wells do that the contract prohibited him from doing?" (*Id.* at 36-37) Counsel responded, "Well, I think by allowing those values to become part of the contract, knowing if there was a problem from where they came from. By allowing those to become the

3

basis for the values for the elevators, that's where there's a breach." (*Id.* at 37) West failed to persuade the Court at oral argument – and, now, has failed again in its motion for reconsideration – that any of this created or proves a contractual obligation that Wells breached.

6. West presents no new information in its motion for reconsideration. Notwithstanding West's speculation to the contrary, the Court did already consider Section 6.1(d), and did not (and still does not) believe it can reasonably be understood to constitute a representation by Wells that the Vogan Appraisal is accurate. The Court considered Section 6.1(d) in the course of evaluating the entirety of the PSA, concluding (among other things) that "the PSA, including all schedules and exhibits identified therein, constituted the entirety of the agreement between the parties," and then observing that the Vogan Appraisal does not appear anywhere in the PSA (or its schedules). (D.I. 97 at 8) (citing Section 13.6 of PSA) Thus, in the Court's view, Wells did not warrant the accuracy of the Vogan Appraisal via Section 6.1(d) of the PSA. The correlation between values in the Vogan Appraisal and prices in the PSA – a matter the Court considered in its original ruling – does not create a warranty that Wells could be found (taking the record in the light most favorable to West) to have breached.

7. The Court additionally analyzed West's evidence of knowing misrepresentation of material fact, in the context of West's fraud claim, and found "many problems with this being a theory." (D.I. 96 at 65) For instance, the Court noted that

> the Vogan report is not even mentioned in the asset purchase agreement. The plaintiff provided a representation and warranty that they did their own financial diligence. The plaintiff retained an independent auditor. A reasonable factfinder could find only, I think, that the plaintiff chose to rely on the Vogan report and did not have to.
>
> Further, the plaintiff purchased the assets as is. The Vogan report itself says it is not to be relied on for any purpose other than in relation to a mortgage transaction that had occurred

4

> approximately two years prior to the transaction that gives rise to the fraud claim here.
>
> A reasonable factfinder, on the record before the Court, could only find that the defendants believed in good faith that they did not have to restate historical financial earnings in connection with what was, after all, an asset transaction.

(*Id.* at 65-66)

8. This reasoning also demonstrates why Wells could not be found to have knowingly misrepresented the accuracy of the Vogan Appraisal (*see* Count IV of Plaintiff's Complaint). The Vogan Appraisal contained a clear internal disclaimer of limited purpose; West stipulated that it conducted its own due diligence; West was and is a sophisticated actor; West was very aware of the overstated grain forward contracts; and Wells had received counsel that would have led any reasonable person to believe that proper accounting methods did not require the restatement of financial records for 2007 to 2010. There is no clear error in the Court's conclusion that no genuine dispute of material fact prevents summary judgment for Wells on Count IV. A reasonable factfinder, even taking the evidence in the light most favorable to West, could only find that Wells provided a "complete picture" of assets and made no knowing misrepresentation of material fact.

9. West has provided no new evidence, suggested no change in the law, and established no clear error in the Court's grant of partial summary judgment. In its May 10, 2019 ruling, the Court considered West's evidence and did not clearly err in granting summary judgment. In the motion for reconsideration, West "simply seeks to rehash the same arguments, based on the same evidence before the Court at the time the issue was decided." (D.I. 97 at 5)

West has identified no meritorious basis for reconsideration and, accordingly, the Court is denying West's motion.

August 1, 2019
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE